UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RAYMO MORALES-DELGADO,<br><br>Defendant. | 4:23-CR-40079-KES<br><br>ORDER GRANTING MOTION TO DISMISS |

Defendant, Raymo Morales-Delgado, moves to dismiss the indictment in the above-entitled matter on the ground that his constitutional right to a speedy trial has been violated. Docket 19.[1]  The government opposes the motion. Docket 24. For the following reasons, the court grants Morales-Delgado's motion to dismiss.

**FACTUAL BACKGROUND**

For the purposes of this motion to dismiss, the court considers the following allegations provided in the affidavit accompanying the 2020 complaint and summarized by the parties in their briefs. *See* 2020 Docket 1-1; Docket 19, 24. But the court reaffirms that Morales-Delgado remains innocent of the charges against him, and the court takes no position on the question of his guilt, or the veracity of any factual allegation presented by the government. *See*

---

[1] The court will cite to documents from this case (23-CR-40079) with the docket number alone. Documents from Morales-Delgado's original criminal case (20-CR-40055) will be cited with "2020" before the docket number.

*Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary[.]" (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).

On May 8, 2020, the government filed a criminal complaint and an accompanying affidavit alleging that Morales-Delgado had illegally reentered the United States after his deportation in March of 2013, in violation of 8 U.S.C. § 1326(a). 2020 Docket 1. The affidavit was provided by a Robert Fritz, a deportation officer employed by the Department of Homeland Security (DHS) Immigration and Customs Enforcement. 2020 Docket 1-1 at 1.

On April 19, 2020, Fritz was contacted by the Beadle County Jail regarding an individual using the name Filadilfo Martin Chilel. *Id.* at 1-2. Because the man claimed to be a citizen of Guatemala, Fritz conducted a telephonic interview with him. *Id.* at 2. Based on the information gathered during the interview and a records check that revealed no criminal or immigration history, the man going by Filadilfo Martin Chilel was released from custody. *Id.* The next day, Fritz received an Immigration Alien Response that revealed, based on fingerprints, that individual claiming to be "Filadilfo Martin Chilel" was truly Raymo Morales-Delgado. *Id.* Morales-Delgado had been ordered to be removed from the United States in 2003, 2005, 2009, and 2013. *Id.* Since his deportation, Morales-Delgado had not obtained permission from the Attorney General or the Secretary of the Department of Homeland Security to reenter the United States. *Id.*

2

Morales-Delgado was subsequently indicted on June 11, 2020 for one count of illegal reentry in violation of 8 U.S.C. § 1326(a) after having been "found in" the United States on April 19, 2020 following a previous deportation. 2020 Docket 4. A warrant was issued for Morales-Delgado's arrest. 2020 Docket 2.

Nearly three years[2] later, Morales-Delgado was arrested.[3] *See* 2020 Docket 19. Morales-Delgado made his initial appearance before Magistrate Judge Veronica Duffy on April 26, 2023. *See* 2020 Dockets 15. Hannah Moravec, an Assistant Federal Public Defender, noted her appearance on behalf of Morales-Delgado. 2020 Docket 11. Magistrate Judge Duffy entered an order detaining Morales-Delgado in the custody of the Marshals Service pending further proceedings. *See* 2020 Docket 9, 15. Judge Karen Schreier entered a scheduling order setting Morales-Delgado's trial date as June 27, 2023. 2020 Docket 18.

On June 13, 2023 Morales-Delgado moved to dismiss the 2020 indictment, claiming the thirty-four months that elapsed between the filing of the indictment against him and his arrest violated his Sixth Amendment right to a speedy trial. 2020 Dockets 21, 22. The government initially opposed this

---

[2] More specifically, the delay was thirty-four and one-half months.
[3] Morales-Delgado was discovered after he was arrested by state authorities in Beadle County, South Dakota for a DUI. 2020 Docket 28 at 1. At the time of his arrest, he used the name "Jesus Castillo" and a birthdate in August 1977. *Id.* A fingerprint scan revealed his true identity and 2020 warrant for his arrest. *Id.*

motion, alleging that Morales-Delgado had not shown sufficient cause to warrant the indictment's dismissal. *See* 2020 Docket 28.

On June 22, 2023, the government filed a new indictment against Morales-Delgado. Docket 1. The 2023 indictment, mirrored the 2020 indictment—also charging one count of illegal reentry in violation of 8 U.S.C. § 1326(a) after having been deported from Brownville, Texas in 2013. *See* 2020 Docket 4; Docket 1. The 2023 indictment, however, listed a new "found in" date of April 22, 2023. Docket 1. Morales-Delgado moved to dismiss the 2023 indictment, arguing that it was multiplicitous because it charged the same offense as the pending 2020 indictment. Docket 15. Seemingly in response to the motion, on July 19, 2023, the government moved to dismiss the 2020 indictment "on the grounds and for the reason that the interests of justice will be best served" by dismissal. 2020 Docket 33. The court granted the motion. 2020 Docket 34; *see also* Docket 17 (order denying Morales-Delgado's motion to dismiss (Docket 15) as moot, because the 2020 indictment was dismissed).

On August 22, 2023, Morales-Delgado made a second motion to dismiss the 2023 indictment, again claiming that his speedy trial rights had been violated. *See* Docket 19.  Specifically, Morales-Delgado asserted that because the 2020 and 2023 indictments charged the same offense, the court should conduct a speedy trial analysis based on the length of time between his arrest and the initial indictment. *See* Docket 20 at 1-3. The government opposes this motion, seemingly arguing that because a violation of 8 U.S.C. § 1326(a) is a continuing offense completed when an individual is "found in" the United

States, the government was free to re-indict Morales-Delgado based on his being found in the United States on April 22, 2023.[4] *See* Docket 24 at 1-2. In the alternative, the government explained that even assuming that Morales-Delgado's speedy trial rights took shape at the time of the 2020 indictment, his rights were not unconstitutionally hampered. *See id.* at 2-7. The government has not requested an evidentiary hearing or submitted any affidavits to support its arguments.

## DISCUSSION

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI. The speedy trial right cannot "be quantified into a specified number of days or months[,]" *Barker v. Wingo,* 407 U.S. 514, 523 (1972), nor does it completely hinge on a defendant's explicit request for a speedy trial, s*ee id.* at 523-29. Rejecting "inflexible approaches" in the Supreme Court in *Barker* concocted a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 529-30. *Barker* established that in determining whether there has been a Sixth Amendment violation, courts must balance four factors: (1) the length of delay; (2) the

---

[4] The defendant maintains that the government's brief does not allege that the offenses listed in the indictments are distinct and instead argues that because the statute of limitations has not run, it is free to reindict Morales-Delgado. Docket 25 at 1-2. The court, however, recognizes that the government, in making this argument impliedly argues that the indictments do not charge the same offense. The government, while seeming to rely on the statute of limitations, does so in order to progress the argument that because illegal reentry is a continuing offense, that for statute of limitations purposes, is completed when an individual is discovered in the United States, that the charges here reflect two separate crimes that were each completed upon Morales-Delgado's discovery in 2020 and in 2023respectively.

reason for the delay; (3) defendant's assertion of his right; and (4) prejudice. *Id.* at 530.

### A. Length of Delay

The first factor—the length of delay—also serves as threshold inquiry, because a defendant must establish that the "delay between indictment and [defendant's] motion to dismiss was presumptively prejudicial[]" in order to trigger the *Barker* balancing analysis. *United States v. Summage*, 575 F.3d 864, 875 (8th Cir. 2009). A post-indictment delay of one year is generally sufficient to meet the threshold inquiry of presumptively prejudicial delay. *See Doggett v. United States,* 505 U.S. 647, 652 (1992) ("lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.").

Thus, here, the court must first determine when Morales-Delgado's speedy-trial clock began to tick. Consistent with Supreme Court precedent, the Eighth Circuit has recognized that the "right to a speedy trial 'attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences.'" *United States v. Erenas-Luna*, 560 F.3d 772, 776 (8th Cir. 2009) (quoting *United States v. McGhee,* 532 F.3d 733, 739 (8th Cir.2008)). The question here turns on *which* indictment is spinning the hands on Morales-Delgado's speedy trial clock. If the clock is ticking based on the 2020 indictment, as Morales-Delgado argues, he will be able to meet the threshold inquiry and show a presumptively prejudicial delay. *See* Docket 20 at 4; *United States v. Cooley*, 63 F.4th 1173, 1177 (8th Cir. 2023) (finding a twenty-eight-

6

month delay presumptively prejudicial). But if the clock was reset by the 2023 indictment, it is uncontested that Morales-Delgado will be unable to make the requisite showing.

Generally, when an indictment is dismissed at the government's behest, and a new indictment for the same offense is filed, the speedy trial analysis should consider the length of delay from the time of the original indictment. *See United States v. Loud Hawk,* 474 U.S. 302, 314 (1986) (holding that the period in which there was no indictment pending should not be considered in determining the length of delay); *United States v. Colombo*, 852 F.2d 19, 23–24 (1st Cir. 1988) (noting the Sixth Amendment speedy trial right parallels the Speedy Trial Act in that when an indictment is dismissed by the government and a new one is filed for the same offense, the delay should be calculated from the first indictment, excluding only the time in which no indictment was pending).

The Eighth Circuit has not addressed what exactly constitutes the "same offense" within speedy trial jurisprudence; thus, this court turns to the other circuits for guidance. The First Circuit measures a delay, for speedy trial purposes, from the original indictment or arrest when the subsequent indictment is "based on the same act or transaction[ ] or [the charge is] [ ] connected with or constitutes part[ ] of the common scheme or plan previously charged[.]" *United States v. Handa*, 892 F.3d 95, 106 (1st Cir. 2018). Similarly, the Second Circuit found that a superseding indictment did not restart the speedy trial clock because its charge arose from "the same conduct as the

7

original indictment." *United States v. Black*, 918 F.3d 243, 259 (2d Cir. 2019). Taking a slightly different approach, the Fifth Circuit measures a delay from an initial indictment when the offense in a new indictment does not require proof of an additional fact that the other does not. *United States v. Martinez-Espinoza*, 299 F.3d 414, 417 (5th Cir. 2002). In other words, the Fifth Circuit held that "where the conduct charged in an initial accusatory instrument, and a subsequent indictment produce[ ] congruent Venn circles, the conduct is the same 'offense'[.]" *Id.* Finally, the Seventh Circuit indicated that an arrest may serve as a trigger for speedy trial purposes when the "crimes for which a defendant is ultimately prosecuted really only gild the charge underlying his initial arrest and the different accusatorial dates between them are not reasonably explicable[.]" *United States v. DeTienne*, 468 F.2d 151, 155 (7th Cir. 1972).

Notably, despite using varying approaches, each circuit that has addressed this issue has founded its analysis in shielding against the same danger— "that the government will use new or superseding indictments, with new or modified charges arising from the same conduct as the initial arrest and indictment, to avoid the strictures of the Speedy Trial Clause." *United States v. Villa*, 70 F.4th 704, 714 (4th Cir. 2023). Further, it is clear that "when charges in a later indictment merely build off the first indictment or the conduct underlying it, courts tend to calculate the length of pretrial delay from the arrest or first indictment." *Id.* As such, here, regardless of which circuit's

methodology this court employs, the result is the same—the 2023 indictment charges the "same offense" as the 2020 indictment.

Both the 2020 and 2023 indictments charge the same "conduct," "act," or "transaction," *see Handa*, 892 F.3d 95, 106; *Black*, 918 F.3d at 259, — Morales-Delgado's presence in the United States after his deportation from Brownsville, Texas in 2013, *see* 2020 Docket 4; Docket 1. Though the indictments reference different "found in" dates, they still charge the same crime with the same elements, neither requiring proof of a fact that the other does not. *See Martinez-Espinoza*, 299 F.3d at 417. "[T]he different accusatorial dates between" the two indictments "are not reasonably explicable[ ]" beyond indicating the government's attempt to remedy a speedy trial issue implicated by the 2020 indictment. *See DeTienne*, 468 F.2d at 155.

The government argues that the continuing nature of a reentry offense under 8 U.S.C. § 1326(a), renders the 2023 "found in" offense separate from that outlined in the 2020 indictment. *See* Docket 24 at 1-2. Specifically, the government relies on language noting that the date an individual is "found in" the United States is considered the day he or she violated § 1326. *See id.; United States v. Estrada-Quijas*, 183 F.3d 758, 761 (8th Cir. 1999).[5]

These assertions flow from a line of cases pinpointing when the statute of limitations begins to run on a "found in" reentry violation. As an initial matter, there are three ways an individual can violate § 1326: "(1) by entering, (2) by

---

[5] The government cites *United States v. Hernandez*, 189 F.3d 785, 790 (9th Cir. 1999), which is not binding on this court, for this proposition. But the Eighth Circuit also found this to be true in *Estrada-Quijas*.

9

attempting to enter, (3) or by being found in the United States without permission from the Attorney General to reenter after previously being deported." *See Estrada-Quijas*, 183 F.3d at 761 (citing 8 U.S.C. § 1326(a)(2)). The five-year statute of limitations begins running when a violation of § 1326 is complete. *United States v. Gomez*, 38 F.3d 1031, 1034 (8th Cir. 1994). For entry or an attempted entry, the clock begins running as soon as the entry or attempted entry is effected. *Id.*

By contrast, the Eighth Circuit has recognized that a "found in" violation of § 1326 is, by necessity, a continuing offense because aliens often enter the United States surreptitiously. *See id.* As such, it is often difficult to ascertain exactly when an individual entered the United States. *Id.* To compensate for this difficulty, the *Gomez* court concluded that a found in violation is completed and the statute of limitations begins to run only when "an individual is discovered by authorities." *Estrada-Quijas*, 183 F.3d at 761. " 'Discovery' in this context consists of two elements: (1) the discovery of a previously deported alien's physical presence in the United States; and (2) the ascertainment of the identity and status of the alien." *United States v. Diaz-Diaz*, 135 F.3d 572, 577 (8th Cir. 1998)). In other words, the statute of limitations begins to run on a "found in" violation "when immigration authorities could have, through the exercise of diligence typical of law enforcement authorities, discovered the violation." *Gomez*, 38 F.3d 1037 (cleaned up).

Thus, while the Eighth Circuit has acknowledged that a "found in" violation is a continuing offense, it made clear that the offense does not

10

continue infinitely. Rather, it is completed when an alien is discovered in the United States. Here, the offense was complete when Morales-Delgado was "found in" the United States in 2020. At that time, the government had discovered both his physical presence in the United States and his identity and status as a previously deported alien. *See* 2020 Docket 1-1. The government's subsequent 2023 indictment, which states that Morales-Delgado was "found in" the United States on April 22, 2023, is the same offense as that charged in 2020, because the government could not have "discovered" Morales-Delgado's presence after it had already done so in 2020. *See* 2020 Docket 4; Docket 1.

This conclusion is consistent with the text and purpose of § 1326(a), which is targeted at prohibiting *reentry*. *See United States v. Flores-Peraza*, 58 F.3d 164, 168 (5th Cir. 1995). The "found in" clause serves only as an evidentiary tool that removes the need for the government to prove when and how an alien entered the United States. *See id.* (noting that unlike a "found in" violation, illegal reentry requires proof of when a non-citizen entered the United States). *See also United States v. Rincon-Diego*, 2012 WL 6021472, at *5 (W.D. Tex. Nov. 19, 2012) (relying on *Flores-Peraza* in stating the "found in" "clause is an evidentiary tool that eschews the need to prove the exact details of how a noncitizen entered the country.") This lessening of the government's evidentiary burden does not remove the reentry requirement from a § 1326(a) "found in" violation. *See Flores-Peraza*, 58 F.3d. at 168 ("Obviously, an alien 'found in' the United States must have entered the United States."). Here, both "found in" indictments allege that Morales-Delgado has violated § 1326 because he

11

reentered the United States after his deportation from Brownsville, Texas in 2013. 2020 Docket 4; Docket 1. There is no allegation that Morales-Delgado left the United States and again illegally reentered between the two alleged "found in" dates.

As the Second Circuit explained it in *United States v. Rivera-Ventura,* there is "no indication that Congress intended being 'found' itself to be treated as a continuing offense so that an alien whom the authorities have once taken into custody with the knowledge of the illegality of his presence may be repeatedly deemed to have been 'found' at some later time or times." *United States v. Rivera–Ventura,* 72 F.3d 277, 282 (2d Cir.1995) (determining where the statute of limitations began to run on a "found in" violation of § 1326). *See also United States v. Gallegos-Delgado*, 1998 WL 34113181, at *3 (N.D. Iowa Feb. 6, 1998) (holding that a defendant could not have been "found in" the Northern District of Iowa after he was previously discovered in the Southern District of Iowa because "[t]o do so would be to "repeatedly deem" him to be found at some later time. . .which this court finds to be in contravention of congressional intent."); *United States v. DiSantillo,* 615 F.2d 128, 137 (3d Cir.1980) (holding that an alien is found when "his [or her] presence is *first* noted by the immigration authorities") (emphasis added)). The Second Circuit reasoned that if Congress had wanted a "found in" violation to serve as a perpetually ongoing offense, it could have expressly stated such, replaced "found in" with "remains in," or omitted the word "found." *Id.* at 282.

To find otherwise, that is, to interpret "found in" in § 1326 as indicating

that the offense is committed every day that the non-citizen is found in the United States would essentially allow for a non-citizen to be subject to a new indictment every day they are present in the United States. This would render the statute of limitations ineffectual, because it would reset each day. *See United States v. Garcia-Moreno*, 626 F. Supp. 2d 826, 834 (W.D. Tenn. 2009) (recognizing this result and noting that Congress may explicitly eliminate a statute of limitations, but it has not done so with regard to § 1326 "found in" violations). More applicable here, interpreting a "found in" violation under §1326 as continuing beyond the time that an alien is first discovered would allow the government to circumvent speedy trial rights by simply reindicting a defendant on a new "found in" date whenever speedy trial issues arose.

Based on the foregoing, the court finds that it is proper to begin running the speedy trial clock from the time of the 2020 indictment because the reentry "found in" offense was completed when Morales-Delgado was discovered in 2020. Thus, the 2023 indictment necessarily charged the same offense.

It follows that the thirty-four months that elapsed between the filing of the 2020 indictment and Morales-Delgado's motion to dismiss is sufficient to meet the threshold for a presumably prejudicial delay. "Three years is a time well in excess of that required to trigger a *Barker* review." *Erenas-Luna*, 560 F.3d at 780 (citing *Doggett,* 505 U.S. at 657-58).

Next, the court must determine "whether delay . . . was uncommonly long." *Cooley*, 63 F.4th at 1178. The length of delay from that point of the 2020 indictment to Morales-Delgado's arrest was thirty-four months—nearly three

years. The court finds this delay sufficiently long to shift this factor into
Morales-Delgado's favor. *See id.* (finding a twenty-nine month delay between
indictment and trial to weigh in the defendant's favor); *Erenas-Luna*, 560 F.3d
at 776 (holding a three year delay between indictment and arrest weighed in
the defendant's favor).

### B. Reasons for Delay

In considering the second *Barker* factor, the court considers the reasons
for the delay and evaluates " 'whether the government or the criminal
defendant is more to blame.' " *Erenas-Luna*, 560 F.3d at 777 (quoting *Doggett*,
505 U.S. at 651). This factor is considered "[t]he flag all litigants seek to
capture." *Loud Hawk,* 474 U.S. at 315. The government bears the burden of
justifying a delay once the *Barker* enquiry has been triggered. *See United States
v. Velazquez*, 749 F.3d 161, 180 (3d Cir. 2014) (citing *Barker,* 407 U.S. at 527).
*See also United States v. Muhtorov*, 20 F.4th 558, 639 (10th Cir. 2021) ("Even
when there is no evidence that the government intentionally delayed the case
for the explicit purpose of gaining some advantage, the government still bears
the burden of bringing a case to trial in a timely fashion, absent sufficient
justification.") (internal citation omitted).

In making this evaluation, courts "weigh an intentional delay by the
government 'heavily against it.' " *Erenas-Luna*, 560 F.3d at 777 (quoting *United
States v. Walker,* 92 F.3d 714, 717 (8th Cir.1996)). While negligence is weighed
"less heavily" against the government, it is still regarded "as a considerable
factor in the weighing process." *Id.* (quoting *Walker,* 92 F.3d at 717). Delay

14

caused by the defense is correspondingly weighed against it. *Cooley*, 63 F.4th at 1178.

As noted above, the length of delay from the filing of the 2020 indictment to Morales-Delgado's ultimate arrest was thirty-four months. While the delay does not seem to have been intentional, the government admits it did not "aggressively seek" Morales-Delgado. Docket 24 at 5. More significantly, however, the government has not indicated that it was looking for Morales-Delgado *at all. See id. See also Morris v. Wyrick,* 516 F.2d 1387, 1390 (8th Cir.1975) (stating that when the record does not demonstrate reason for the delay and the government provides no explanation, the court will "assume that there is no justifiable reason and weigh this factor heavily against" the government). Instead, it simply admitted that law enforcement failed to seek Morales-Delgado "likely" because of the COVID-19 pandemic. Docket 24 at 5. But the government failed to explain *how* the pandemic affected the search for Morales-Delgado or what specific search tactics were hampered. Notably, as Morales-Delgado argues, the government chose to indict him during the pandemic—it could have waited to indict him if it believed that the pandemic would disrupt its ability to apprehend Morales-Delgado. *See* Docket 25 at 4 n.2.

The government also argues that the delay "could also be" a consequence of Morales-Delgado's use of false names. Docket 24 at 5. The government

15

alleges that Morales-Delgado is known to have used five aliases[6] and "used different names at the time of his removal, including in 2013, at the time of his arrest in 2020, and at the time of his arrest in 2023." *Id.* Courts are entitled to weigh heavily against the defendant the fact that he "attempted to conceal his whereabouts while he was a fugitive by using a false name and false identification.' " *Walker,* 92 F.3d at 718. A court need not ignore a defendant's fugitivity, but even if a defendant flees to avoid prosecution, the government can be faulted for the delay if it failed to use " 'reasonable diligence' " to locate him. *See Doggett*, 505 U.S. at 656–57. "To satisfy the requirement of reasonable diligence, the government does not need to make heroic efforts to pursue a suspect, but it must at least make a serious effort[.]" *Velazquez*, 749 F.3d at 180 (internal citations omitted).

Here, the contention that Morales-Delgado's potential use of false names delayed the government in finding him is too speculative. *See Erenas-Luna*, 560 F.3d 772, 776–77 (rejecting the argument that the length of delay should be shortened simply because the government would likely not have been successful in locating the defendant sooner because it was "speculative at best."). Because, again, the government has failed to show that it was making a "serious effort" to search for Morales-Delgado under *any* name. Additionally, the government has not alleged that it tried to locate Morales-Delgado at the

---

[6] In its reply brief, the defense notes that two of the names listed in the government's records are simply "mis-transcriptions" of Morales-Delgado's name. Docket 25 at 3 n.1.

address he provided to authorities at the time of his arrest in 2020. Docket 25 at 3.

Courts have held that merely relying on the entry of an arrest warrant in a government database is not sufficiently diligent. *See e.g.*, *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008) ("[I]n this case, the record is silent as to any efforts by the government to apprehend [defendant] beyond merely entering [his] arrest warrant in the law enforcement database, and the evidence before the district court is insufficient to support a finding that the government conducted a serious effort to find [defendant]."); *United States v. Eguez*, 2016 WL 6493456, at *8 (M.D. Fla. Nov. 2, 2016) ("The government took the most minimal steps possible in this case—it placed defendant in the NCIC computer system and waited. The Sixth Amendment required much more in this case."); *United States v. Avila*, 2007 WL 3396417, at *11 (D. Nev. Nov. 8, 2007) ("[T]he Government has an obligation to exercise due diligence to find and apprehend indicted persons. It is not due diligence to simply wait until an accused 'pops-up' into government view and then arrest him.").

Similarly, the government made no showing that Morales-Delgado lived under any of his aliases. The Eastern District of California, in holding that the government had not diligently searched for the defendant, noted the difference between a defendant using an alias when confronted by law enforcement and living under an alias. *See United States v. Gonzalez-Martinez*, 634 F. Supp. 3d 853, 875 (E.D. Cal. 2022). There, the court held that "where a defendant uses aliases to avoid detection *prior to* an indictment . . . but subsequently lives

17

openly under his true name in the same jurisdiction only a short distance from where he initially interacted with law enforcement" and is not pursued by law enforcement, the government has not been diligent. *Id*; *see also United States v. Love*, 125 F.3d 856 , 1997 WL 618831, at *3 (6th Cir. Oct. 6, 1997) (weighing the second *Barker* factor in the defendant's favor, despite his use of eight aliases, because the government did not diligently attempt to locate and arrest the defendant).

Moreover, this case is distinguishable from *United States v. Walker*. *Walker,* 92 F.3d at 718. There, the Eighth Circuit held that a thirty-seven-month delay between the indictment and the defendant's arrest did not offend the defendant's speedy trial rights. *Id.* at 719. In *Walker*, however, the defendant fled Nebraska soon after the government indicted him on drug conspiracy charges and went to Los Angeles. *Id.* at 715-16. The court recognized that while the government knew of this, it never obtained information as to where exactly the defendant was in Los Angeles. *Id.* at 718. The government did, however, regularly check the National Crime Information Center (NCIC) database to see if the defendant had been located. *Id.* Further, the court distinguished Walker's actions from those of other defendants in Supreme Court precedent by noting that "Walker attempted to conceal his whereabouts while he was a fugitive by using a false name and false identification." *Id.* (distinguishing *Doggett,* 505 U.S. at 649-52). Based on these facts, the court found that the government had not been negligent in pursuing the defendant. *Id.*

18

Here, there is no evidence that Morales-Delgado fled South Dakota or attempted to conceal his whereabouts. In fact, it seems that Morales-Delgado remained in Beadle County—the same place where he was arrested in both 2020 and 2023. *See* 2020 Docket 1-1 at 1; 2020 Docket 28 at 1. Also, unlike *Walker*, the government provided no evidence that it checked NCIC to see if Morales-Delgado had been located nor did the government put forth any evidence that Morales-Delgado was living under a false name or using fake identification while remaining in Beadle County.

In conclusion, the government has made no showing that it was actively seeking Morales-Delgado in the nearly three years before he was arrested by local authorities and his presence was made known to the government. Thus, the court finds that the government was not diligent in attempting to apprehend Morales-Delgado and this factor weighs in Morales-Delgado's favor.

### C. Assertion of the Speedy Trial Right

"The third *Barker* factor considers 'whether in due course the defendant asserted his right to a speedy trial.' " *Erenas-Luna*, 560 F.3d at 778 (quoting *Walker,* 92 F.3d at 718). Morales-Delgado argues that because he asserted his right to speedy trial at the first trial setting after his arrest, this factor weighs in his favor. Docket 15 at 6. By contrast, the government argues that because the defendant has moved to continue the trial date to allow for the consideration of the motion to dismiss, the factor does not weigh strongly in Morales-Delgado's favor.

The court, however, finds that this factor weighs in neither party's favor. In *United States v. Erenas-Luna*, the Eighth Circuit held, where the delay complained of was post-indictment and pre-arrest, the defendant's "post-arrest assertion of his speedy-trial right has little bearing on his claim." *Id.* "[W]here the defendant was unaware of his indictment until his arrest but later raised a speedy-trial claim . . . the third *Barker* factor had no application and merely '[cannot] be weighed against [the defendant].' " *Id.* (quoting *United States v. Richards,* 707 F.2d 995, 997 (8th Cir. 1983) (second alteration in original)). Thus, because the 2020 indictment was sealed and there is no evidence that Morales-Delgado knew about it until his arrest in 2023, the court does not weigh this factor in either party's favor.

### D. Prejudice

"The final *Barker* factor—prejudice—considers 'whether the defendant suffered prejudice as a result of the delay.' " *United States v. Rodriguez-Valencia*, 753 F.3d 801, 807 (8th Cir. 2014) (quoting *Erenas-Luna*, 560 F.3d at 778). This factor is assessed " 'in the light of the interests of defendants which the speedy trial right was designed to protect.... (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Id.* (quoting *Erenas–Luna,* 560 F.3d at 778).

Morales-Delgado has not shown any actual or specific prejudice. *See* Docket 15 at 6-7. Instead, he argues that the length of the delay allows the court to presume prejudice. *See id.* at 7. The government argues that prejudice

should not be presumed and points to a Ninth Circuit case requiring a showing of actual prejudice. Docket 24 at 6 (citing *United States v. Walker*, 68 F.4th 1227, 1239 (9th Cir. 2023)).

"The extent to which a defendant must demonstrate prejudice under this factor depends on the particular circumstances." *Erenas–Luna,* 560 F.3d at 778. Generally, if the government exercised reasonable diligence in pursuing the defendant, actual prejudice is required. *Daggett,* 505 U.S. at 656; *United States v. Brown,* 325 F.3d 1032, 1035 (8th Cir. 2003). When the delay is caused by the government's negligence, however, the court may presume prejudice if the delay was excessive. *Daggett,* 505 U.S. at 656–58.

In *Erenas-Luna*, the Eighth Circuit acknowledged that "the weight assigned to the presumption [varies] according to the government's negligence and the length of delay[.]" *Erenas–Luna,* 560 F.3d at 780. There, the court determined that the government was negligent in failing to enter the defendant's arrest warrant into the NCIC database and failing to follow up on the defendant's known contacts or look for him at his last known location. *Id.* at 775, 777. Because the government's negligence was "clear[]" and "serious[],"the Eighth Circuit found that the resulting three-year delay warranted a presumption of prejudice. *Id.* at 779-80.

Similarly here, there is no indication in the record that the government diligently pursued Morales-Delgado.  Nor is there any evidence in the record that law enforcement checked the address he provided authorities in 2020. *See* Docket 25 at 3. Even the government concedes that law enforcement did not

21

"aggressively seek [Morales-Delgado][.]" Docket 24 at 5. And, exactly like the defendant in *Erenas-Luna*, Morales-Delgado was not arrested until he was discovered by state authorities on an unrelated charge, roughly three years after the original indictment. *See* Docket 19 at 1; *Erenas–Luna,* 560 F.3d at 775. Thus, the level of negligence and delay present here are sufficient for the court to presume prejudice on behalf of Morales-Delgado. The court finds that this factor weighs in Morales-Delgado's favor.

## CONCLUSION

The thirty-four-month delay between the 2020 indictment and Morales-Delgado's arrest was sufficient to presumptively trigger analysis under the Supreme Court's factors in *Barker* as to whether Morales-Delgado's constitutional right to a speedy trial was violated. The first, second, and fourth factors weigh in favor of Morales-Delgado and the third factor does not weigh in favor of either party. The three-year delay was overly long and caused by the government's negligence in failing to diligently seek Morales-Delgado. As a result, the court presumes that Morales-Delgado was prejudiced by the delay. Thus, it is

ORDERED that Morales-Delgado's motion to dismiss (Docket 19) is granted.

Dated October 4, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE